IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

CHAD A. WESTON,                          )
                                         )
            Plaintiff,                   )   TC-MD 150443N
                                         )
      v.                                 )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
            Defendant.                   )   **FINAL DECISION**

The court entered its Decision in the above-entitled matter on June 9, 2016.  Plaintiff timely

filed a Statement for Costs and Disbursements (Statement) on June 22, 2016, requesting his costs in

the amount of $311.95.  Defendant did not file an objection to Plaintiff's Statement within the 10-day

period provided by Tax Court Rule-Magistrate Division (TCR-MD) 16 C(2)(a).  The court's analysis

and determination of Plaintiff's request for costs and disbursements is contained in section III.  The

court's Final Decision otherwise incorporates its Decision without change.

Plaintiff appeals from Defendant's Conference Decision, issued July 14, 2015, for the

2012 tax year.  A trial was held in the Oregon Tax Courtroom on February 18, 2016, in Salem,

Oregon.  Carol Compton, Licensed Tax Consultant, appeared on behalf of Plaintiff.  Plaintiff

testified on his own behalf.  Johnny Helt (Helt), Tax Auditor, appeared and testified on behalf of

Defendant.  Plaintiff's Exhibits 1 through 22 and Defendant's Exhibits A through M were

received without objection.

## I.   STATEMENT OF FACTS

Plaintiff testified that he has been an employee of Emery & Sons Construction (ESC)

since 1993, working as a heavy equipment operator and also as a laborer.  (*See* Ptf's Exs 5, 8.)

Plaintiff testified that ESC's shop yard (shop) was located in Salem, Oregon.  The shop included

a mechanic shop, truck dispatcher, payroll office, and necessary tools. Plaintiff's activities at the shop included attending weekly or quarterly safety meetings,[1] loading tools and equipment, and periodically cleaning and performing other chores. (*See* Ptf's Exs 8, 9.) Plaintiff testified that he typically spent 30 minutes or more at the shop each day. He testified that on "quite a few" occasions, he worked an entire day or more at the shop. For instance, Plaintiff testified he once spent one week building a wash rack. Plaintiff testified that any work he did at ESC's shop, including attending safety meetings, was recorded as "laborer" on the certified payroll reports. According to Plaintiff's certified payroll report for the first week of January 2012, Plaintiff worked 9.00 hours as a "Pow Eqp Opr" and 18.50 hours as a "Laborer." (Ptf's Ex 18.)

ESC dispatched its employees, including Plaintiff, to temporary job sites throughout Oregon and Washington. (Ptf's Exs 5, 8.) A letter from ESC stated: "Ordinarily, [Plaintiff] arrived at our construction office and yard * * * in Salem in time to be dispatched to a worksite; he parked his car at that location and rode in the company truck. He would work his shift and return to the construction office." (Ptf's Ex 8; *see also* Ptf's Ex 9.) Plaintiff testified that ESC typically drove Plaintiff and other employees to various job sites; Plaintiff rode as a passenger. Another letter from ESC explained that when the company vehicles "are not available, the employees are responsible for traveling to these jobsites in their personally owned vehicles and we do not reimburse employees for the miles they travel." (Ptf's Ex 5.)

Plaintiff worked on a job in North Plains, Oregon, from January through November 2012. (*See* Ptf's Ex 8.) The parties agreed that the North Plains job was temporary. ESC wrote that "company transportation was not available for [Plaintiff]" for that job. (*Id.*) "Due to the

---

[1] Plaintiff testified that safety meetings occurred weekly until 2012. "In 2012, the weekly safety meetings were changed to be held at the various jobsites, but the company still required that all of its construction workers attend mandatory quarterly safety meetings at the Shop in Salem." (Ptf's Ex 9.)

economic downturn, the company decided in 2012 that construction employees would drive themselves daily to certain jobsites directly from home, and would not be reimbursed for those transportation expenses." (Ptf's Ex 9.) Plaintiff was required to drive himself to the North Plains job site in 2012. (*Id.*) "For other, smaller jobs in 2012 (Forest Park, Hillsboro and the Salem bridge), [Plaintiff] drove to the Shop as usual." (*Id.*) Plaintiff testified that, as of 2013, he had resumed riding to jobs with ESC.

A.      *Plaintiff's Mileage*

Plaintiff testified that he has lived in Lacomb, Oregon, near Lebanon, Oregon, since 2009. Between 2009 and 2012, he regularly commuted to ESC's shop. Plaintiff lived about 30 miles from ESC's shop and the drive took approximately 40 minutes. (*See* Ptf's Ex 6.) Plaintiff testified that his driving route to North Plains was 90 miles one way from his house. Plaintiff provided a "MapQuest" print out that showed the distance between Plaintiff's residence and North Plains was 87.85 miles. (Ptf's Ex 10.) Plaintiff provided a copy of the mileage log that he kept in 2012. (Ptf's Ex 11.) For several weeks in September and October 2012, he rode in the ESC truck to the North Plains job site. (*See id.* at 5–6.) Plaintiff calculated 29,520 business miles in 2012 based on 164 days multiplied by 180 miles per day. (*See* Ptf's Ex 12.) Plaintiff's mileage log indicates that he drove from home to the North Plains job site 159 days in 2012. (*See* Ptf's Ex 11.)

Plaintiff testified that he drove a 2001 Ford Ranger for part of 2012 and a 2001 Honda Accord for the rest of the year. (*See* Ptf's Ex 11 at 7.) He testified that he used his odometer to calculate his mileage. The mileage log reports Plaintiff's starting and ending odometer readings for the Ford Ranger were 183,546 and 191,300, respectively, for a total of 7,754 miles driven in 2012. (*Id.*) Of that, Plaintiff determined 7,586 miles were for business and 168 were personal.

(*See id.*)  The log states Plaintiff's starting and ending odometer readings for the Honda Accord were 142,910 and 165,654, respectively, for a total of 22,744 miles driven in 2012.  (*Id.*)  Of that, Plaintiff determined 21,934 miles were for business and 810 were personal.  (*See id.*)  Plaintiff reported his total mileage for those two vehicles on his 2012 tax return.  (*See* Ptf's Ex 13 at 5.)

On his 2012 tax return, Plaintiff checked the box "Yes" that he or his spouse had another vehicle available for personal use.  (Ptf's Ex 13 at 5.)  Plaintiff testified he and his former wife had four vehicles.  He testified that his other vehicle was a 1996 diesel Ford pickup truck with four-wheel drive that he sometimes drove to the Salem shop, especially in the winter when the weather was bad.  (*See* Ptf's Ex 19.)  Plaintiff testified that he did not drive the pickup to the North Plains job site and his log mileage does not reflect any miles driven in the pickup.

Helt questioned why Plaintiff did not include any stops at the Salem shop on his mileage log.  Plaintiff testified that he did not record in his log whether he stopped in Salem on the way to the North Plains job site and he did not claim any extra mileage for those stops.  He testified that, during the first nine months of 2012, he did not typically have to pick up safety equipment or tools at the shop; his supervisor would bring them to the job site.  Plaintiff testified that he attended safety meetings at the Salem shop, but did not record any of those trips because he did not intend to claim any of those miles as business miles.  He testified that he did not claim any mileage for driving to the Salem shop when he was working on the Salem bridge job.

B.    *Defendant's Audit and Conference Adjustments*

In its explanation of audit adjustments, Defendant wrote that Plaintiff did "not have a regular place of work, therefore the travel to North Plains cannot be deductible and is disallowed."  (*See* Ptf's Ex 3.)  Defendant's conference officer concluded that Plaintiff's travel expenses were not deductible because he did not live and work in the same metropolitan area: he

lived in Lebanon, which the conference officer found to be within the Albany metropolitan area; his employer's shop was in Salem, located in the Salem metropolitan area; and he worked most of the year in North Plains, located in the Portland metropolitan area. (Ptf's Ex 4.)

Helt testified that ESC's letter stating that transportation to the North Plains job site was unavailable to Plaintiff is inconsistent with Plaintiff's mileage log, which indicates Plaintiff rode with ESC to that job site on 35 days. (*See* Def's Ex C at 1–2.) He testified that ESC also wrote that Plaintiff had to pick up tools and equipment in Salem, yet those miles are not in the log. (*See* Ptf's Exs 9, 11.) Helt testified that the mileage totals calculated based on Plaintiff's odometer readings are inconsistent with his mileage log. (*See* Def's Ex D.) He testified that Plaintiff reported a total of 978 personal miles on his income tax return for two vehicles, which would account for only 16.25 trips to Salem.

Plaintiff testified that Defendant disallowed all of his miscellaneous itemized deductions, including his $50 deduction for tax preparation. (*See* Ptf's Ex 13 at 3, Ex 3.) Plaintiff testified that he could not find his receipt, but recalled paying about $50 for TurboTax and provided a document showing that he and his former wife filed his 2011 return using TurboTax. (*See* Ptf's Ex 16 (printout from TurboTax for Plaintiff's 2011 tax year filing).)

## II. ANALYSIS

The primary issue presented is whether Plaintiff may deduct unreimbursed employee business traveling expenses for the 2012 tax year. The secondary issue is whether Plaintiff may deduct tax preparation fees for the 2012 tax year.

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction

to tax and the revenue needs of the state[.]" ORS 316.007(1).[2] "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter." ORS 316.012. On the issues presented in this case, "Oregon law makes no adjustments to the rules under the Internal Revenue Code (IRC) and therefore, federal law governs the analysis." *Austin v. Dept. of Rev.*, 20 OTR 20, 22 (2009) (citing ORS 316.007; ORS 316.012).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiff must establish his claim by a preponderance of the evidence, or the more convincing or greater weight of the evidence. *Feves v. Dept. of Revenue.*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency[.]" ORS 305.575.

A.      *Unreimbursed Employee Expenses: Mileage*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. To be 'ordinary[,]' the

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC.

Ordinary and necessary business travel expenses, including transportation, are deductible under IRC section 162(a). "The taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses." Treas Reg § 1.262-1(b)(5). "Commuting expenses are considered not to be required by business because where a taxpayer chooses to live is a personal decision. The distance a taxpayer chooses to live from his place of business does not change the character of the expense." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996). Revenue Ruling 99-7, 1991-1 CB 361, describes several circumstances under which daily transportation expenses between a taxpayer's home and work are deductible:

> "(1) A taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *outside* the metropolitan area where the taxpayer lives and normally works. However, unless paragraph (2) or (3) below applies, daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *within* that metropolitan area are nondeductible commuting expenses.
>
> "(2) If a taxpayer has one or more regular work locations away from the taxpayer's residence, the taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location in the same trade or business, regardless of the distance. (The Service will continue not to follow the *Walker* decision.)
>
> "(3) If a taxpayer's residence is the taxpayer's principal place of business within the meaning of § 280A(c)(1)(A), the taxpayer may deduct daily transportation expenses incurred in going between the residence and another work location in the same trade or business, regardless of whether the other work location is *regular* or *temporary* and regardless of the distance."

(Emphasis in original.)

Plaintiff maintains that he qualifies under the second circumstance in Revenue Ruling 99-7 because the ESC shop was his "regular work location." (*See* Ptf's Ex 1 at 3–4.) Alternatively, Plaintiff maintains that he qualifies for the first circumstance in Revenue Ruling 99-7. (*Id.* at 4.) Defendant's conference officer concluded that Plaintiff did not qualify under the first circumstance because Plaintiff did not live and normally work in the same metropolitan area; he lived in the Albany metropolitan area and, arguably, normally worked in the Salem metropolitan area. Plaintiff disagrees and contends that he lived in the Salem metropolitan area because there is only a 10-mile difference between traveling from his home to the Salem shop and traveling from his home to downtown Albany. (*See id.*at 4–5.)

1.     *Regular place of business*

Under the second circumstance described in Revenue Ruling 99-7, a taxpayer may deduct daily transportation expenses for travel between the taxpayer's residence and a temporary work location *if* the taxpayer has one or more regular work locations away from the taxpayer's residence. With respect to the "regular work location" circumstance, the U.S. Tax Court observed that the term "regular work location" is not defined in Revenue Ruling 99-7 and determined that it should be given the same definition as "regular place of business" under Revenue Ruling 90-23, 1990-1 CB 28. *Bogue v. Comm'r*, 102 TCM (CCH) 41 (2011), WL 2709818 at *12 (US Tax Ct). Revenue Ruling 90-23 defines "regular place of business" as "any location at which the taxpayer works or performs services on a regular basis."

The parties agreed that Plaintiff's job site in North Plains was temporary. The question is whether ESC's shop was Plaintiff's "regular work location." Plaintiff has worked for ESC since 1993 and his duties have fallen into two classifications: heavy equipment operator and laborer. In his capacity as a laborer, Plaintiff performed services at the shop, including loading tools and

equipment, cleaning, and performing other chores, in addition to attending safety meetings. Before Plaintiff was assigned to work at the North Plains job site, he typically reported to the Salem shop and spent at least 30 minutes working there before he was dispatched to another job site. After he finished working at the North Plains job site, Plaintiff resumed reporting daily to the shop. The court is persuaded that Plaintiff regularly performed services at the shop. The court finds that the ESC shop was Plaintiff's regular work location. Plaintiff is, therefore, permitted to deduct transportation expenses incurred in traveling between his residence and the North Plains job site. The court need not address Plaintiff's alternative position.

2.  *Substantiation*

Having found that Plaintiff's transportation expenses were deductible, the court must next decide if they were substantiated. IRC section 274(d) imposes strict substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A)(i). *See* Treas Reg § 1.274-5T(a). To substantiate travel expenses, the taxpayer must prove the expenditure amount, the time, the place, and the business purpose of the travel. Treas Reg § 1.274-5T(b)(2). "To meet the 'adequate records' requirement of [IRC] section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar records * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *." Treas Reg § 1.274-5T(c)(2)(i).

Plaintiff provided a handwritten log that he maintained during the 2012 tax year to document the dates that he drove his personal vehicle to the North Plains job site. The log identifies the dates and location of Plaintiff's business travel. The location is corroborated by the letters from ESC confirming that Plaintiff was assigned to work at the North Plains job site. Plaintiff identified the business purpose of his travel to the North Plains job site through his

credible testimony and the letters from ESC. Plaintiff chose to use the mileage rate rather than actual automobile expenses, so receipts for gas and other similar automobile expenditures are not required. Plaintiff's mileage log indicates that he drove to and from the North Plains job site in his personal vehicle on 159 days in 2012. And although Plaintiff wrote in his mileage log that his round trip travel to North Plains was 180 miles each day, Plaintiff's "MapQuest" print out showed the distance between Plaintiff's residence and North Plains was 87.85 miles one way, or 176 miles (rounded) round trip. (*Compare* Ptf's Ex 11 *with* Ptf's Ex 10.) The court finds the MapQuest print out to be a more persuasive indicator of the distance that Plaintiff traveled each day. Taken together, Plaintiff's mileage log and the MapQuest print out indicate that Plaintiff drove a total of 27,984 miles to and from the North Plains job site, based on 176 miles per day for 159 days.

The 2012 mileage substantiated by Plaintiff's mileage log and MapQuest print out is less than the 29,520 business miles he claimed on his 2012 tax return. Items stated on a return should be supported by adequate records. *See* ORS 314.425; IRC § 6001. Plaintiff's recordkeeping in 2012 lacked some precision, resulting in a discrepancy between Plaintiff's records and his return. However, the court will allow Plaintiff a 2012 tax year mileage deduction to the extent it is substantiated by his records.

Defendant challenged the credibility of Plaintiff's mileage log based on Plaintiff's failure to account for his personal mileage (both commuting to the shop and other personal mileage) and based on some inconsistencies between Plaintiff's log and ESC's letters. Based on Plaintiff's log, Defendant determined that Plaintiff drove to the shop and rode with ESC to the North Plains job site on 35 days in 2012. Plaintiff's log indicates that he also drove to the shop when he was working on the Commercial Street Bridge job in Salem from October 8, 2012, to October 12,

2012, and when he was working on the Forest Park job in Portland from November 26, 2012, to December 28, 2012. (Ptf's Ex 1 at 5–6.) Defendant determined, and the court agrees, that the personal mileage Plaintiff reported on his 2012 income tax return was not sufficient to allow for over 35 round trips between Plaintiff's home and the shop. Plaintiff addressed that discrepancy: he had another vehicle—a diesel pickup truck—that he used purely for personal travel, including commuting to the shop. He provided a copy of his registration for the pickup truck.

Defendant also questioned discrepancies between ESC's letters and Plaintiff's mileage log. Specifically, ESC's letters indicate that company vehicles were not available to Plaintiff in 2012 for his travel to the North Plains job site, and that Plaintiff was required to pick up safety equipment and tools at the shop in 2012. By contrast, Plaintiff's log indicates that he rode with ESC in a company vehicle to the North Plains job site on 35 days in 2012, and Plaintiff testified that he did not typically pick up safety equipment or tools at the shop in 2012 because his supervisor transported them to the North Plains job site. It is unclear why ESC provided transportation to Plaintiff on 35 days in 2012, contrary to its policy. ESC's decision to provide some transportation to Plaintiff does not prove that transportation was available to Plaintiff on other occasions in 2012. ESC's letters explain its policy with respect to Plaintiff's transportation to the North Plains job site in 2012, and the court is persuaded that Plaintiff was generally required to provide his own transportation.

With respect to safety equipment and tools, ESC's letter states that Plaintiff "also had to get his safety equipment from the Shop in Salem for all of 2012, as well as his supplies for the smaller jobs in 2012." (Ptf's Ex 9.) Plaintiff's testimony is generally consistent with ESC's letter, except for Plaintiff's testimony that his supervisor transported safety equipment and tools to the North Plains job site. The court found Plaintiff's testimony to be credible and, in light of

Plaintiff's testimony, understands ESC's statement to be a general one. Plaintiff's arrangement with his supervisor during the North Plains job was evidently an exception to Plaintiff's general arrangement with ESC.

In sum, Plaintiff's failure to record his personal mileage and the discrepancies between ESC's letters and Plaintiff's testimony are not sufficient to rebut the court's finding that Plaintiff drove 27,984 miles in 2012 for his business. Plaintiff is permitted to take a 2012 tax year deduction for unreimbursed employee business expenses based on 27,984 miles.

B.      *Tax Preparation Fees*

Plaintiff challenges Defendant's adjustment disallowing his $50 deduction for tax preparation. (Ptf's Ex 1 at 3.) Plaintiff contends that the deduction should be allowed even though he was unable to locate his receipt. (*Id.*) Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543–44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). Plaintiff provided a copy of the TurboTax 2011 filing instructions, which are addressed to Plaintiff and his former wife. They do not identify the amount paid for TurboTax. The court accepts that Plaintiff used TurboTax in 2011, but Plaintiff provided no evidence of who paid for TurboTax or the amount paid. Plaintiff's tax preparation deduction is not allowed.

## III. COSTS AND DISBURSEMENTS FACTS AND ANALYSIS

As described above, Plaintiff filed a Statement requesting an award of the following costs and disbursements: filing fee, $252; parking expenses, $3; and supplies for exhibits, $56.95. Plaintiff attached documents supporting each item claimed, with the exception of the filing fee. *See* TCR-MD 16 C(1) (requiring proof of claimed costs and disbursements except the filing fee).

The Magistrate Division has discretionary authority under ORS 305.490(2) to award costs and disbursements to the prevailing party. *Withol I. v. Dept. of Rev.*, 21 OTR 260, 267–68 (2013); TCR-MD 16. Although TCR-MD 16 does not define "prevailing party," this court has looked to the definition of "prevailing party" found in ORS 20.077(2), regarding making an award of attorney fees, for guidance. *Stade v. Dept. of Rev.*, TC-MD 150369N, WL 282206 at *5 (Jan 21, 2016). ORS 20.077(2) defines the prevailing party as "the party who receives a favorable judgment or arbitration award on the claim." Thus, the court must determine the prevailing party on a "claim-by-claim basis," weighing "what was sought by each party against the result obtained." *Stade*, 2016 WL 282206 at *5 (citations and internal quotation marks omitted).

In this case, Plaintiff appealed from Defendant's Conference Decision denying Plaintiff's 2012 tax year deductions for (1) unreimbursed employee travel expenses and (2) tax preparation fees. With respect to the first claim, the court found that Plaintiff was entitled to a deduction based on 27,984 business miles driven during 2012, which constituted a majority of the miles originally claimed by Plaintiff. Plaintiff was therefore the prevailing party on his unreimbursed employee travel expenses claim. With respect to the second claim, the court found that Plaintiff did not substantiate the $50 deduction he claimed for tax preparation fees. Plaintiff was not the prevailing party on that claim.

Having concluded that Plaintiff is the prevailing party with respect to one claim, the court must next determine, in its discretion, whether to award costs and disbursements to Plaintiff. This court has identified several considerations relevant to its decision to award costs, including whether the originally filed return was accurate, whether the taxpayer availed himself of any administrative appeal available to him, and "whether the outcome on appeal involved wins and

losses for both parties." *Stade*, 2016 WL 282206 at \*5; *see also Wihtol v. Multnomah County Assessor,* TC-MD 120762N, WL 274126 at \*5 (Jan 24, 2014).

Plaintiff first appealed Defendant's audit adjustments by requesting a conference with Defendant. Plaintiff appealed the Conference Decision to this court, and the court found that Plaintiff substantiated the vast majority of the business miles claimed on his 2012 tax return. However, Plaintiff was not the prevailing party on one of his claims, and in that respect, this case involves wins and losses for both sides. Plaintiff's $50 deduction for tax preparation fees was a minor issue in this case, both in terms of dollar value and time spent by the parties litigating the issue. Moreover, the costs that Plaintiff now seeks would have been incurred by Plaintiff regardless of whether he challenged the denial of his tax preparation fee deduction.[3] Under those circumstances, the court concludes that Plaintiff should be awarded his costs and disbursements as requested in his Statement.

## IV. CONCLUSION

After careful consideration, the court finds that Plaintiff is allowed a 2012 tax year deduction for unreimbursed employee business expenses based on 27,984 miles. Plaintiff failed to prove by a preponderance of the evidence that he incurred a $50 expense for tax preparation fees. No deduction for tax preparation fees is allowed for the 2012 tax year. Plaintiff's request for costs and disbursements is granted. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2012 tax year, Plaintiff is allowed a deduction for unreimbursed employee business expenses based on 27,984 miles.

/ / /

---

[3] Plaintiff offered only one exhibit that exclusively related to the tax preparation fee deduction. (*See* Ptf's Ex 16.) To the extent that that document may have contributed to the cost of "supplies for exhibits," the court finds the amount to be *de minimis*.

IT IS FURTHER DECIDED that Plaintiff's claimed deduction for $50 in tax preparation fees for the 2012 tax year is denied.

IT IS FURTHER DECIDED that Plaintiff's request for costs and disbursements in the amount of $311.95 is granted.

Dated this ___ day of July 2016.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on July 7, 2016.*